[No. 2276-3.   Division Three.   May 17, 1978.]

GORDON K. ALLEN, *Respondent,* v. GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC., *Appellant.*

*Raymond J. Lee,* for appellant.

*Richard H. Bennett* and *Bennett & Carroll,* for respondent.

GREEN, J.—Plaintiff, Gordon K. Allen, sued defendant, General Telephone Company, for damages representing the loss of business profits resulting from defendant's failure to list Allen's business in the yellow pages of its telephone directory for the year 1975–76. The trial court awarded Mr. Allen damages in the sum of $2,610.36. Defendant appeals.

The sole issue is whether the disclaimer of liability set forth in the defendant's filed tariff schedule is valid and binding on the defendant's customers. There is no prior Washington case on point.

The defendant is a public utility and, as such, its "rates, services, facilities and practices" are regulated by the Washington Utilities and Transportation Commission. RCW 80.01.040. The defendant is required to file with the Commission its

> schedules showing the rates, tolls, rentals, contracts and charges . . . for . . . services rendered . . . The schedules printed . . . shall plainly state . . . separately all charges and all privileges or facilities granted or allowed, and any rules or regulations or forms of contract which may in anywise change, affect or determine any of the aggregate of the rates, tolls, rentals or charges for the service rendered.

RCW 80.36.100. This statute also requires the telephone company to keep a copy of its schedule accessible for convenient inspection by the public, and to post a notice in its

office informing the public of their right to inspect the schedule and of their right to assistance from a company agent in determining what rules or regulations are in force. Additionally, these statutes provide that all rates, tolls, contracts and charges, and rules and regulations for services rendered shall be fair, just, reasonable and sufficient. RCW 80.36.080. Also,

> No telephone . . . company shall charge . . . different compensation for any service rendered . . . than the charge applicable to such service as specified in its schedule on file and in effect at that time, nor shall any telephone company . . . extend to any person or corporation any form of contract or agreement or any rule or regulation or any privilege or facility except such as are specified in its schedule filed and in effect at the time . . .

RCW 80.36.130. It is interesting to note that the legislature has made the orders and the rules of the Commission conclusive in actions between private parties and public service companies, unless the rule or order is first set aside or annulled in a review as provided by statute. RCW 80.04.410.

Defendant's tariff schedule is filed with the Commission and a copy thereof, a 400–page document, is maintained at defendant's business office.[1] This tariff requires the defendant to furnish, without extra charge, one listing in standard–size print in the yellow pages for all business offices listed in the white pages. Defendant also offers additional yellow–page services for a charge, including printing the name of a business in bold type. The tariff schedule, as filed with the Commission, provides:

> The Company is not liable for damages arising from errors in or omissions of directory listings for which there is no charge . . .

---

[1]Presumably, the defendant complied with RCW 80.36.100 in posting the proper notice of its tariff schedule since no issue is raised concerning that point.

The tariff further provides that:

> In the case of listings for which a charge is made, its liability shall be limited to the monthly rate for each such listing for the charge period during which the error or omission continues.

Mr. Allen owns and manages an employment agency, Personnel Resources, in Richland. Upon the defendant's solicitation, he filled out an application for additional yellow–page services which provided for a monthly charge of $2.05 for printing the name of his business in the yellow pages in bold type rather than in the standard–size print. Wording on the face of the application, directly above and below the signature line, stated that the application was made in accordance with terms on the reverse side. On the reverse side of the application, it read, *inter alia*:

> 1. **Acceptance of Application.** It is mutually understood and agreed that the publication of the advertising requested in the Telephone Directory shall constitute an acceptance of this application by the Telephone Company. Otherwise, this application is not binding on either of the parties.
>
> . . .
>
> 3. **Errors and Omissions.** The Telephone Company shall not be liable to the Advertiser for damages resulting from failure to include any item of advertising specified in this agreement in the directory or from errors in the advertising printed in the directory in excess of an amount equal to the agreed price for said item of advertising for the issue in which the error or omission occurs.

Although Mr. Allen's business phone and address were listed in the white pages of the 1975–76 directory, they were not listed in either the standard print or the bold type in the yellow pages. At the ensuing trial for damages, the defendant admitted its negligence for the omission, but contended that its liability was effectively limited by both the application and the filed tariff.

In his memorandum opinion, the trial judge noted that the defendant could not bind Mr. Allen to the limitation of liability contained in the application because the application stated that it did not bind either party until the listing

sought was published; hence, the application did not ripen into a contract. Nor could the defendant bind Mr. Allen to the disclaimer or limitation of liability provisions in the filed tariff, because Mr. Allen was never informed of the tariff regulations. Consequently, the trial court ruled that those provisions in the tariff were unconscionable and unenforceable. We disagree with this ruling.

The case law in this area may be categorized as follows:

A. Some courts have interpreted state statutes governing the regulation of public utilities as providing a complete system of regulation, including regulation of all yellow–page services. These courts hold that a limitation of liability rule or regulation found in a telephone company's filed tariff limits liability for errors and omissions in the yellow pages as well as those in the white pages. *Cole v. Pacific Tel. & Tel. Co.*, 112 Cal. App. 2d 416, 246 P.2d 686 (1952), *aff'd* in *Hall v. Pacific Tel. & Tel.*, 20 Cal. App. 3d 953, 98 Cal. Rptr. 128 (1971); *Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co.*, 279 F. Supp. 712 (W.D. Okla. 1967); *Warner v. Southwestern Bell Tel. Co.*, 428 S.W.2d 596 (Mo. 1968). They reason that the fixing of rates and the regulation of matters affecting rates is a legislative function delegated to the public utilities commission by statute. Therefore, when a rule disclaiming or limiting liability is filed, as required by law, it becomes part of the law and is binding upon the customer whether he actually knows of the limitation or not, so long as the telephone company does not seek immunity from liability for gross negligence or willful misconduct. *Cole v. Pacific Tel. & Tel. Co., supra* at 687; *Warner v. Southwestern Bell Tel. Co., supra* at 601; *Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co., supra* at 714.

B. Other jurisdictions have interpreted their public utility statutes as governing the white–page service, but not the yellow–page service. These courts hold that listings in the yellow pages are a matter of private contract. *McTighe v. New England Tel. & Tel. Co.*, 216 F.2d 26 (2d Cir. 1954);

*State ex rel. Mountain States Tel. & Tel. Co. v. District Court,* 160 Mont. 443, 503 P.2d 526 (1972).

C. Still other courts do not refer to their public utility statutes, but base their decisions on a construction of the private contractual relationship between the parties. *Gas House, Inc. v. Southern Bell Tel. & Tel. Co.,* 289 N.C. 175, 221 S.E.2d 499 (1976); *Robinson Ins. & Real Estate, Inc. v. Southwestern Bell Tel. Co.,* 366 F. Supp. 307 (W.D. Ark. 1973); *Hamilton Employment Serv., Inc. v. New York Tel. Co.,* 253 N.Y. 468, 171 N.E. 710 (1930); *Georges v. Pacific Tel. & Tel. Co.,* 184 F. Supp. 571 (D. Ore. 1960); *Baird v. Chesapeake & Potomac Tel.,* 117 A.2d 873 (Md. Ct. App. 1955); *University Hills Beauty Academy, Inc. v. Mountain States Tel. & Tel. Co.,* ___ Colo. App. ___, 554 P.2d 723 (1976); *Allen v. Michigan Bell Tel. Co.,* 18 Mich. App. 632, 171 N.W.2d 689 (1969). The unstated inference in these cases is that the public utility statutes do not govern the yellow–page service.

Virtually all jurisdictions[2] have enforced such limitations and disclaimers of liability, whether contained in a filed tariff or a private contract,[3] unless the company's negligence is willful or gross.

---

[2] The only case brought to the attention of this court in which the plaintiff successfully sued for all of his damages is *Allen v. Michigan Bell Tel. Co., supra.* There, the court held that a contractual limitation of liability clause was unconscionable, basing its decision on a finding of inequality of bargaining power between the parties. The reasoning in *Allen* has been criticized by other courts in several later opinions. *Allen v. Michigan Bell Tel. Co., supra,* criticized in *Robinson Ins. & Real Estate, Inc. v. Southwestern Bell Tel. Co., supra* at 304; *Gas House, Inc. v. Southern Bell Tel. & Tel. Co., supra* at 503–04; *State ex rel. Mountain States Tel. & Tel. Co. v. District Court, supra* at 530.

[3] Assuming arguendo that the application in the instant case did amount to a contract between the parties, we do not find the clause limiting damages to the service charges unconscionable. In *Schroeder v. Fageol Motors, Inc.,* 86 Wn.2d 256, 260, 544 P.2d 20 (1975), a case arising under Article 2 of the Uniform Commercial Code, the court noted that all the surrounding circumstances of the agreement must be considered in determining the issue of conscionability. The surrounding circumstances include the conspicuousness of the clause in the agreement, the presence or absence of negotiation regarding the issue, the custom and usage of the trade, and any policy developed between the parties during the course of prior dealings. While the present case is not governed by Article 2 since

■ In the instant case, the defendant, pursuant to statute, filed a tariff schedule entitled "Directory Service" which mandated that "each business . . . will receive one listing in the classified at no charge." It is clear that the publication of the initial listing in standard–size print in both the white and the yellow pages is a service of the telephone company which promotes its principal business of transmitting messages. Unlike yellow–page *advertising* which the company prints only upon application and at an additional charge, the initial yellow–page listing is provided to every business as part of its regular directory service. Without this service, the public would find it difficult, if not impossible, to locate a particular type of business in the white pages. For example, Mr. Allen's business, Personnel Resources, would appear under the letter "P" rather than under the letter "E" for employment agencies. Thus, we hold that under Washington law, the initial yellow–page listing in standard–size print is an essential part of the telephone company's directory service in aid of its primary business of transmitting messages and is subject to public

it involves the furnishing of a service, we note that the wording on the face of the application near the signature line directed Mr. Allen's attention to the limitation of liability clause on the back and that the heading of the clause itself was in bold–face type. Further, it may certainly be said that the "custom and usage" of the telephone trade is to include such clauses in applications or contracts for yellow–page service.

Finally, the reasoning used by other courts in upholding such provisions when contained in a contract is persuasive. These courts observe that the inequality of bargaining power between the telephone company and the businessman desiring to advertise in the yellow pages of the directory is more apparent than real. It is not different from that which exists in any other case in which a potential seller is the only supplier of a particular article or service. *McTighe v. New England Tel. & Tel. Co., supra* at 28; *Gas House, Inc. v. Southern Bell Tel. & Tel. Co., supra* at 505. There are many other modes of advertising to which the businessman may turn if the contract offered him by the telephone company is not attractive. *Gas House, Inc. v. Southern Bell Tel. & Tel. Co., supra* at 505; *Robinson Ins. & Real Estate, Inc. v. Southwestern Bell Tel. Co., supra* at 304. In addition, the advertisement in the yellow pages is offered at a much more reasonable cost than marketplace advertising because the telephone company relies on the limitation of liability clause. Without such a clause, potential damages could be extremely burdensome, for the telephone company does not have an opportunity to correct an error and thereby mitigate its damages until the following year. *State ex rel. Mountain States Tel. & Tel. Co. v. District Court, supra* at 530.

regulation. To this extent we disagree with those courts which hold that *all* yellow–page services are a matter of private contract.

■ Analysis of our statutes supports this holding. Under RCW 80.36.100, defendant was required to file and did file its schedule containing all rules which affect charges for services rendered. Further, the defendant, as a public utility, cannot charge what the market will bear for yellow–page listings as it is required to limit its charges to those which are "fair and reasonable," RCW 80.36.080, and, once its tariff schedule is filed and approved, the defendant cannot enter into any agreement at variance with it. RCW 80.36.130. The rule which disclaims or limits the telephone company's liability for damages resulting from a failure to print this initial listing is one which affects the charges for basic services rendered. Without such a rule, the company would have to raise its rates commensurate to its increased liability risk. When so filed and approved by the Commission and when proper notice is given that the tariff is available for public inspection, the rule becomes a part of the law of this state. Since Mr. Allen did not challenge the rule in an administrative review, it is conclusive on the question of liability in this action between him and the defendant. RCW 80.04.410. In this collateral challenge there are no constitutional questions raised. Consequently, plaintiff's remedy, if any, lies with the legislature.

Reversed.

MUNSON, C.J., and ROE, J., concur.

Reconsideration denied June 30, 1978.

Review denied by Supreme Court November 17, 1978.