**Tommy HELMS and Ken Helms, Plaintiffs-Appellants,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant-Appellee.**

No. 86–1003.
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 14, 1986.

Rehearing Denied Aug. 18, 1986.

Lawrence L. Mealer, Thomas J. Lochry, Dallas, Tex., for plaintiffs-appellants.

Barbara McElroy, Dallas, Tex., for defendant-appellee.

Before REAVLEY, GARWOOD, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

This appeal requires us to determine whether a cause of action exists under either the Texas Deceptive Trade Practices-Consumer Protection Act [DTPA], Tex. Bus. & Com. Code Ann. §§ 17.41–.63 (Vernon Supp.1986), or the Texas common law of negligence whenever a contract to print telephone directory advertising is breached. We agree with the district court's dismissal of the plaintiffs' DTPA claims, but conclude that the district court erred in dismissing the negligence claim.

## I.

According to their assertions, in 1976 Tommy and Ken Helms formed a partnership know as "Chem Strip" in order to engage in the business of removing paint and rust from metal, wood, and other materials with a chemical immersion process. The Helmses worked in the Dallas area and advertised Chem Strip in the Greater Dallas Yellow Pages [Yellow Pages] published by Southwestern Bell Telephone Company [Southwestern Bell]. The Helmses decided to move their business to Mesquite, Texas, a suburb of Dallas. In early 1981 the Helmses contacted Southwestern Bell regarding advertising in the 1981 edition of the Yellow Pages and they were informed that they would have to install telephone service at their Mesquite premises before such advertising could be accepted. They completed their move to the new location and had a telephone installed there.

Ken Helms signed an agreement dated May 4, 1981, providing for the placement of the following advertisement in the 1981 Consumer Edition and the Business-to-Business Edition of the Yellow Pages.[1]

CHEM STRIP
> DALLAS' OLDEST AND MOST REPUTABLE CHEMICAL IMMERSION PROCESS FOR PAINT & RUST REMOVAL

820 Scyene Rd_____228–6437

The agreement included the following clause:

> The applicant agrees that the Telephone Company shall not be liable for errors in or omissions of the directory advertising beyond the amount paid for the advertising omitted, or in which errors occur, for the issue life of the directory involved.

This ad was printed correctly in the Business-to-Business Edition, but the Consumer

---

1. The Helmses allege that in 1981 Southwestern Bell first began to publish two editions of the Yellow Pages, the Consumer Edition for retail use and the Business-to-Business Edition for commercial use.

Edition erroneously listed the telephone number as "228–6437." Shortly after its publication in October 1981, the Helmses discovered the error and informed Southwestern Bell.

The Helmses requested Southwestern Bell to implement an intercept service to route incoming telephone calls from the incorrect number to the correct one. Southwestern Bell refused, stating that such an intercept was not mechanically feasible because it would require the creation of a "228" prefix, one which did not previously exist in the Dallas area. Southwestern Bell refunded the amount paid for the incorrect advertisement and made no further billing.

The Helmses filed suit in Texas state court against Southwestern Bell, which succeeded in removing the case to federal district court.[2] The Helmses alleged that Chem Strip began to suffer a continuing decline in revenues after the publication of the incorrect ad, ultimately leaving them no alternative but to sell their company at a loss in February 1982. The Helmses alleged two causes of action, one under the DTPA and one under the common law of negligence. The district court granted Southwestern Bell's motion for summary judgment, reasoning that a simple breach of contract did not create an action under the DTPA and that the limitation of liability clause was enforceable to preclude any common law claims. The Helmses appeal.

## II.

All facts and inferences must be viewed in the light most favorable to the Helmses, the party opposing the summary judgment motion. *See United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). For the purposes of the motion, Southwestern Bell did not challenge any of the Helmses' factual assertions. This case was thus an appropriate one for resolution by summary judgment, for there were no genuine issues as to any material facts. *See*

*Nicolson v. Life Insurance Co. of the Southwest,* 783 F.2d 1316, 1318 (5th Cir. 1986). The only issues were ones of law: whether Southwestern Bell's conduct gave rise to an action on behalf of the Helmses under either the DTPA or Texas common law.

## A.

The Helmses claim that Southwestern Bell violated the terms of the DTPA both in misprinting their telephone number and in refusing to provide an intercept service. Their complaint alleged that "[i]n the course of the transaction made the basis of this lawsuit," Southwestern Bell violated several provisions of the DTPA: (1) committing a "breach of an express or implied warranty," in violation of § 17.50(a)(2), by failing to print the correct number; (2) engaging in "false, misleading, or deceptive acts or practices," in violation of § 17.46(a), by refusing to institute an intercept service on the grounds of impracticality; (3) violating in an unspecified way § 17.50(a)(3) (which prohibits "any unconscionable action or cause of action"), § 17.46(b)(5) (which prohibits *inter alia* the representation of goods or services as having "characteristics, . . . uses, [or] benefits . . . which they do not have"), § 17.46(b)(7) (which prohibits *inter alia* the representation of goods or services as being of "a particular standard, quality, or grade . . . if they are of another"), and § 17.46(b)(12) (which prohibits the representation of an agreement as conferring or involving "rights, remedies, or obligations which it does not have or involve . . .").

Texas courts will give the DTPA "its most comprehensive application possible without doing any violence to its terms." *Cameron v. Terrell & Garrett,* 618 S.W.2d 535, 541 (Tex.1981); *see also* DTPA § 17.44. Nevertheless, this Court has held that the DTPA, however far-reaching it may be, has not completely supplanted the Texas common law of contracts. "[A] simple

---

**2.** Jurisdiction was based on diversity of citizenship. The parties agree that Texas law controls the issues presented here on appeal. *See Erie*

*R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937).

breach of contract is not contemplated as a deceptive trade practice under the Texas DTPA...." *Dura-Wood Treating Co. v. Century Forest Industries, Inc.*, 675 F.2d 745, 756 (5th Cir.), *cert. denied*, 459 U.S. 865, 103 S.Ct. 144, 74 L.Ed.2d 122 (1982). "[A]n allegation of breach of contract—without more—does not constitute a false, misleading, or deceptive action such as would violate section 17.46 of the DTPA." *Id.* Although the *Dura-Wood* defendant had "acted unconscionably in breaching the contract," the DTPA did not apply. *Id.* at 755–56.

■ The *Dura-Wood* panel directly based its holdings on two Texas intermediate court opinions. *See Coleman v. Hughes Blanton, Inc.*, 599 S.W.2d 643, 646 (Tex.Civ.App.—Texarkana 1980, no writ); *Holloway v. Dannenmaier*, 581 S.W.2d 765, 767 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.). As the *Holloway* court observed, "[u]sually mere failure to later perform a promise does not constitute misrepresentation." *Id.* (citation omitted). The Texas Supreme Court has now adopted the rule of *Dura-Wood* and the lower Texas courts that "a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Ashford Development, Inc. v. USLife Real Estate Services Corp.*, 661 S.W.2d 933, 935 (Tex.1983) (citing *Dura-Wood* and *Coleman*). The district court below applied this rule in its determination that the Helmses had no cause of action under the DTPA. We agree.[3]

The "more" that is required to change a breach of contract action into a DTPA claim is not settled by Texas case law. In *Martin v. Lou Poliquin Enterprises, Inc.*, 696 S.W.2d 180 (Tex.App.—Houston [14th

Dist] 1985, writ ref'd n.r.e.), evidence indicated that a defendant which solicited Yellow Pages advertising contracted with the plaintiff to submit the plaintiff's ad to the telephone company but failed to do so. The defendant then assured the plaintiff that the ad had been submitted, and the plaintiff took no further action until the Yellow Pages were published without the ad. On these facts, the *Martin* court affirmed the plaintiff's DTPA award. Similarly, in *White v. Southwestern Bell Telephone Co., Inc.*, 651 S.W.2d 260, 262 (Tex. 1983), Southwestern Bell misprinted the plaintiff's telephone number and then assured him that an intercept service would be provided. The plaintiff testified that an effective intercept was not provided, and the *White* court reversed the trial court's grant of an instructed verdict for Southwestern Bell on his DTPA claim. *See also Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612, 614 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (plaintiff reassured several times that Yellow Pages advertising had been procured, but ad did not appear); *Southwestern Bell Telephone Co. v. Nash*, 586 S.W.2d 647, 648 (Tex.Civ. App.—Austin 1979, no writ) (Southwestern Bell assured plaintiff that intercept service would be provided). In any event, no such assurances and misrepresentations occurred here.[4]

The acts of which the Helmses complain amount to no more than a simple breach of contract. Southwestern Bell contracted with the Helmses to print their advertisement as requested but because of some unspecified error failed to do so. The "misrepresentation" alleged by the Helmses was nothing more than Southwestern Bell's failure to perform its promise to correctly print the ad. The Helmses have alleged no

---

3. The *Dura-Wood* holding applied expressly to claims of misleading practices under DTPA § 17.46 and implicitly to claims of unconscionable acts under § 17.50(a)(3). *Dura-Wood* thus directly disposes of all of the DTPA claims alleged in the Helmses' complaint except for the breach of warranty allegations under § 17.-50(a)(2). However, the Helmses have apparently abandoned their warranty claims and do not press them on appeal.

4. We cannot agree, however, with the district court's sweeping statement that "[i]t is necessary that plaintiffs allege intent to deceive or misrepresent. *See Weitzel v. Barnes*, 691 S.W.2d 598 (Tex.1985)." the *Weitzel* court examined § 17.-46(b)(7) of the DTPA and concluded that " 'subdivision (7) contains no requirement of proof of intent.' We hold that such provision likewise makes no requirement of proof of trickery, artifice, or device."

other misrepresentations.[5] They requested an intercept service and Southwestern Bell simply refused.[6] The Helmses have not indicated how such a refusal can be transformed into a DTPA cause of action.[7] The facts alleged by the Helmses constitute the "allegation of breach of contract—without more" found wanting by *Dura-Wood*.[8]

### B.

■ The district court disposed of the Helmses' negligence claim on the ground that the contractual limitation of liability was reasonable and binding. An identical clause was upheld in *Wade v. Southwestern Bell Telephone Co.*, 352 S.W.2d 460, 463 (Tex.Civ.App.—Austin 1961, no writ) (citing *Faber v. Southwestern Bell Telephone Co., Inc.* 155 F.Supp. 162, 163 (S.D. Tex.1957)). The plaintiff in *Wade* claimed that Southwestern Bell breached written and oral contracts by omitting his name and telephone number from the Yellow Pages. The *Wade* court examined the clause, determined that the plaintiff "is precluded by the limitation of liability clause of the contract," and affirmed an instructed verdict for Southwestern Bell. *Id.* The Texas Supreme Court has expressly avoided ruling on whether Southwestern Bell's liability for Yellow Pages errors is limited by its tariff or advertising contracts. *White*, 651 S.W.2d at 263. However, federal courts in examining the *Wade* rule have treated it as an accurate expression of Texas law. *See Joplin v. Southwestern Bell Telephone Co.*, 753 F.2d 808, 810 (10th Cir.1983) (holding that both Texas and Oklahoma law permit a limitation of liability clause for Yellow Pages errors); *Robinson Insurance & Real Estate Inc. v. Southwestern Bell Telephone Co.*, 366 F.Supp. 307, 311 & n. (W.D.Ark.1973) (surveying various jurisdictions to support proposition that "ordinary negligence is not sufficient to overcome a telephone directory contract limitation...").[9]

---

**5.** The Helmses do not allege that Southwestern Bell misrepresented the truth or engaged in other wrongdoing when it informed them that installation of telephone service was a prerequisite to the placement of Yellow Pages advertising.

**6.** A Texas court has held that once a telephone company agrees to provide intercept service to a customer who relocates his business, "the company [has] a duty not to damage [the customer] by negligently failing to carry out its agreement to intercept his calls and refer them to his new numbers." *Southwestern Bell Telephone Co. v. Reeves*, 578 S.W.2d 795, 799 (Tex.Civ.App.— Houston [1st Dist.] 1979, wrot ref'd n.r.e.). *Reeves* is distinguishable because Southwestern Bell made no such agreement with the Helmses.

**7.** Nor have the Helmses alleged that Southwestern Bell had an underlying duty to provide intercept service, whether based on contract, tariff, tort, or otherwise. However, we need not express any opinion on whether such a duty exists; we hold only that on these facts no DTPA cause of action is present.

**8.** The Helmses attempted to escape this result by purposely omitting from their complaint a breach of contract claim. Such a tactic cannot change an essentially meritless DTPA claim into a sound one.

**9.** Courts in interpreting the law of at least twenty-nine other states have examined this question, and all but three have upheld similar liability limitation clauses for Yellow Pages. *See McTighe v. New England Telephone and Telegraph Co.*, 216 F.2d 26 (2nd Cir.1954) (Vermont law); *Robinson Insurance & Real Estate Inc. v. Southwestern Bell Telephone Co.*, 366 F.Supp. 307 (W.D.Ark.1973); *Holman v. Southwestern Bell Telephone Co.*, 358 F.Supp. 727 (D.Kan.1973); *Wheeler Stuckey, Inc. v. Southwestern Bell Telephone Co.*, 279 F.Supp. 712 (W.D.Okla.1967); *Georges v. Pacific Telephone and Telegraph Co.*, 184 F.Supp. 571 (D.Or.1960); *Neering v. Southern Bell Telephone Co.*, 169 F.Supp. 133 (S.D.Fla.1958); *Davidian v. Pacific Telephone and Telegraph Co.*, 16 Cal.App.3d 750, 94 Cal.Rptr. 337 (1971); *University Hills Beauty Academy, Inc. v. Mountain States Telephone and Telegraph Co.*, 38 Colo.App. 194, 554 P.2d 723 (1976); *Ed Fine Oldsmobile, Inc. v. Diamond State Telephone Co.*, 494 A.2d 636 (Del.1985); *Southern Bell Telephone and Telegraph Co. v. C & S Realty Co.*, 141 Ga.App. 216, 233 S.E.2d 9 (1977), *overruled in part on other grounds, Georgia-Carolina Brick and Tile Co. v. Brown*, 153 Ga.App. 747, 266 S.E.2d 531 (1980); *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.*, 95 Ill.2d 68, 69 Ill.Dec. 183, 447 N.E.2d 400 (1983); *Woodburn v. Northwestern Bell Telephone Co.*, 275 N.W.2d 403 (Iowa 1979); *Louisville Bear Safety Service, Inc. v. South Central Bell Telephone Co.*, 571 S.W.2d 438 (Ky. 1978); *Wilson v. Southern Bell Telephone and Telegraph Co.*, 194 So.2d 739 (La.App.1967); *Baird v. Chesapeake and Potomac Telephone Co.*, 208 Md. 245, 117 A.2d 873 (1955); *Warner v.*

Our inquiry would end, and we would apply the heretofore settled rule of *Wade*, were it not for the recent modification of this rule by another Texas intermediate court. *See Reuben H. Donnelley Corp. v. McKinnon*, 688 S.W.2d 612 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). The *Donnelley* plaintiff purchased a business from a third party who assured him that the Reuben H. Donnelley Corporation [RHD] would arrange for the continuation of the advertisement of the business in the local telephone directory. The ad did not appear in the next edition and the plaintiff sued RHD on DTPA and negligence claims. A jury found RHD negligent in cancelling the ad and assessed actual damages on this claim, but found no actual damages on the DTPA claim.[10] On an appeal brought by RHD, the Texas Court of Appeals affirmed the negligence award, rejecting RHD's claim that the limitation of liability clause in its contract with the third party was enforceable. The *Donnelley* court distinguished *Wade* as an action for breach of contract rather than for negligence or DTPA violation. 688 S.W.2d at 615. The Helmses insist that *Donnelley* controls, since their only common law action is one for negligence, not breach of contract.

An initial examination of these lower court decisions, gives us no clear answer, for we find the *Wade* and *Donnelley* rules in conflict.[11] *Wade* endorsed the limitation of liability clause without qualification. *Donnelley*, however, relied on two cases from other jurisdictions which held such a clause unconscionable and thus unenforceable.[12] The distinction advanced by *Donnelley*, that between contract and tort, is tenuous. While, as *Donnelley* observed, a Texas court may not enforce a contractual limitation of liability as a defense to an intentional tort such as fraud,[13] no tort based on intent, recklessness, or gross negligence was mentioned in *Wade*, *Donnelley*, or the Helmses' complaint. If the same conduct which establishes the breach of contract may be deemed mere "negligence" in the performances of the contract

Southwestern Bell Telephone Co., 428 S.W.2d 596 (Mo.1968); *Montana ex rel. Mountain States Telephone and Telegraph Co.*, 160 Mont. 443, 503 P.2d 526 (1972); *Federal Building Service v. Mountain States Telephone and Telegraph Co.*, 76 N.M. 524, 417 P.2d 24 (1966); *Hamilton Employment Service v. New York Telephone Co.*, 253 N.Y. 468, 171 N.E. 710 (1930); *Gas House v. Southern Bell Telephone and Telegraph Co.*, 289 N.C. 175, 221 S.E.2d 499 (1976), *overruled in part on other grounds, North Carolina ex rel. Utilities Commission v. Southern Bell Telephone and Telegraph Co.*, 307 N.C. 541, 299 S.E.2d 763 (1983); *Cunha v. Ohio Bell Telephone Co.*, 26 Ohio Misc. 267, 271 N.E.2d 321 (Ct.C.P., Cuyahoga Co. 1970); *Behrend v. Bell Telephone Co. of Pa.*, 257 Pa.Super. 35, 390 A.2d 233 (1978) (appeal after remand of 242 Pa.Super. 47, 363 A.2d 1152 (1976), *vacated*, 473 Pa. 320, 374 A.2d 536 (1977)); *Pride v. Southern Bell Telephone and Telegraph Co.*, 244 S.C. 615, 138 S.E.2d 155 (1964); *Smith v. Southern Bell Telephone and Telegraph Co.*, 51 Tenn.App. 146, 364 S.W.2d 952 (1962); *Atkin Wright & Miles v. Mountain States Telephone and Telegraph Co.*, 709 P.2d 330 (Utah 1985); *Allen v. General Telephone Co. of the Northwest*, 20 Wash.App. 144, 578 P.2d 1333 (1978). For the three jurisdictions holding to the contrary rule, see *infra* note 12.

**10.** The jury also awarded "additional damages" under the DTPA, apparently pursuant to the treble damages provision of § 17.50(b)(1).

Such an award is available when the trier of fact determines that the defendant's conduct was "committed knowingly." *Id.* This portion of the award was eliminated on appeal because of the absence of actual DTPA damages. 688 S.W.2d at 617.

**11.** Conflicts among the Texas intermediate appellate courts can and do occur, for the decision of one court of appeals is not necessarily binding on another. *See Calvary Temple v. Taylor*, 288 S.W.2d 868, 871 (Tex.Civ.App.—Galveston 1956, no writ); *see also* 16 Tex.Jur.3d *Courts* § 127 (1981). The Texas Supreme Court has jurisdiction in cases "in which one of the courts of appeals holds differently from a prior decision of another court of appeals...." Tex. Gov't Code Ann. § 22.001(a)(2) (Vernon Supp. 1986).

**12.** *See Discount Fabric House v. Wisconsin Telephone Co.*, 117 Wis.2d 587, 345 N.W.2d 417 (1984); *Thomas v. General Telephone Directory Co.*, 127 Mich.App. 788, 339 N.W.2d 257 (1983). We have discovered one other jurisdiction which would support *Donnelley*. *See Rozeboom v. Northwestern Bell Telephone Co.*, 358 N.W.2d 241 (S.D.1984).

**13.** *See DeKalb Hybrid Seed Co. v. Agee*, 293 S.W.2d 64 (Tex.Civ.App.—Beaumont 1956, writ ref'd n.r.e.).

and thus actionable for full damages, then the *Donnelley* rationale might be termed a purely formalistic attempt to reject *Wade* rather than to distinguish it.

However, under Texas law actions for breach of contract and negligence are not necessarily mutually exclusive:

> Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract. In such a case, the contract is mere inducement creating the state of things which furnishes the occasion of the tort. In other words, the contract creates the relation out of which grows the duty to use care.

*Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W. 508, 510 (Tex.1947) (citation omitted). Although the Texas Supreme Court in 1983 avoided passing on the validity of a Yellow Pages liability limitation, it did indicate two years later that it favored the *Donnelley* approach.[14] We conclude that the district court erred in dismissing the negligence claim.

Accordingly, we AFFIRM the dismissal of the DTPA claim, but we REVERSE the dismissal of the negligence claim.

AFFIRMED in part, REVERSED in part and REMANDED.

---

**14.** We are guided in this conclusion not by any express statement from the Texas Supreme Court, but rather by its disposition of the application for writ of error from the *Donnelley* decision. The *Donnelley* writ history, "writ ref'd n.r.e.," means "Writ Refused, No Reversible Error." "A decision to ... refuse a writ 'n.r.e.' is a statement on the merits of the appeal, and lends precedential weight to the value of the publish- ed opinion of the court of appeals." Robertson & Paulsen, *Rethinking the Terms Writ of Error System,* 17 Tex.Tech.L.Rev. 1 (1986). We recognize that there are many ways in which this often cryptic writ notation may express no indication of the Texas Supreme Court's approval of a lower court's reasoning, *see id.* at 37–41, but we have excluded all reasonable means of avoiding *Donnelley*.