**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**Eugene C. DELANNEY, Appellee.**

**No. 9614.**

Court of Appeals of Texas, Texarkana.

Oct. 18, 1988.

Rehearing Denied Nov. 15, 1988.

John A. Buckley, Jr., Greer, Foutch, Herz & Adams, Galveston, for appellant.

Anthony P. Griffin, Anthony P. Griffin, Inc., Galveston, for appellee.

BLEIL, Justice.

In Southwestern Bell Telephone Company's appeal from a judgment on a verdict finding that it negligently damaged Eugene Delanney, Southwestern Bell raises issues concerning the questions asked of the jury, the denial of its motions for a directed verdict and a new trial, the enforceability of a contractual limitation and the sufficiency of the evidence. We find no error affecting the trial court's judgment and affirm.

Delanney operated Delanney & Associates, a real estate firm in Galveston, which had successfully advertised in Southwestern Bell's Yellow Pages. In April of 1980, Delanney and Southwestern Bell agreed to a Yellow Pages listing of Delanney's real estate business in the 1980–81 telephone directory. Also in 1980, Delanney decided to include a third line on his rotary system and to add another line to one of his two remaining inactive lines. This required the cancellation of one line and the transfer of this line to the rotary system. The cancelled line was the number to which the Yellow Pages listing was billed. Delanney requested the change before the Yellow Pages listings were sent to the printer. Because of Southwestern Bell's internal billing procedure, Delanney's request resulted in the deletion of his Yellow Pages advertisement from the 1980–81 directory.

Delanney sued Southwestern Bell for negligence. The jury found that Southwestern Bell's deletion of Delanney's Yellow Pages advertisement resulted from negligent acts which caused Delanney to suffer lost profits in the amount of $109,-200.00 during the year his firm was not listed and $40,000.00 for loss of future profits. The trial court remitted the future damage award to $11,840.00.

Initially Southwestern Bell contends that the trial court erred in submitting a question to the jury asking if Southwestern Bell was negligent, claiming that in reality it had merely breached a contract with Delanney and that the underlying action sounded in contract alone. Southwestern Bell cites authorities which distinguish actions in con-

tract from actions in tort, and argues that Delanney's action is based solely in contract because the duty imposed on Southwestern Bell arose purely by virtue of the contract. Southwestern Bell claims that an action in contract is for breach of a duty arising out of a contract, while an action for tort is for a breach of duty imposed by law, relying on *International Printing Pressmen and Assistants' Union v. Smith,* 145 Tex. 399, 198 S.W.2d 729, 735 (1946).

■ A party to a contract owes a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing to be done, and a negligent failure in performing any of these conditions can be the basis for recovery in tort as well as a breach of contract. *Coulson v. Lake L.B. J. Municipal Utility District,* 734 S.W.2d 649 (Tex.1987); *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947). Southwestern Bell relies on *Jim Walter Homes, Inc. v. Reed,* 711 S.W. 2d 617 (Tex.1986), which provides some guidance as to when an action sounds in tort and when an action sounds in contract. In that case, the Reeds brought an action against the housing contractor who breached their construction contract by failing to build the house according to contract specifications. In addition to breach of contract, the Reeds claimed negligent supervision of construction by the contractor. In determining whether an action is based in tort or contract, the court noted that it is the substance of the cause of action and not necessarily the manner of pleading which controls, and that the nature of the injury most often determines the duties that are breached. Generally, when the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d at 618.

■ Delanney did not receive the advertisement he paid for and as a result suffered damages. When Southwestern Bell cancelled a listing and added a third rotary line, it was negligent in so doing and responsible for the damages proximately caused thereby. The specific findings of negligence on the part of Southwestern Bell were:

(1) failing to inform Delanney that the installation of a rotary system would cancel the Yellow Pages listing;

(2) failing to adequately train and inform its employees that an order to cancel one of the telephone numbers would cancel the Yellow Pages advertisement; and

(3) failing to recognize that the automatic cancellation of the Yellow Pages advertisement would occur when the billing procedure was changed.

Most of the cases relied on by Southwestern Bell focus on the award of exemplary damages. The plaintiff in those cases was required to have proven—in addition to a breach of contract and damages—a distinct tortious injury with actual damages to support an additional award of exemplary damages. Exemplary damages are not involved in this case. The only damages awarded to Delanney were for lost profits, which are actual damages.

■ Turning to other issues, Southwestern Bell claims that the trial court erred in overruling its motions for directed verdict and for new trial because the evidence adduced at trial failed to establish a negligence cause of action. Delanney's negligence action is based on Southwestern Bell's handling of Delanney's request for an additional rotary line. Delanney claimed that Southwestern Bell failed to inform him that the addition of an extra rotary line would cancel his Yellow Pages listing, that Southwestern Bell negligently failed to recognize that automatic cancellation would take place, and that Southwestern Bell failed to inform and properly train its employees.

Lorraine Miller, a Southwestern Bell employee, testified that she received training to become a service representative. She stated that Delanney's wife called to request that one of the Delanney listings be cancelled and added as a third number to the rotary line, so Miller pulled the equipment listing, got the information and told Delanney she would get back with her. Miller wrote the order, disconnected the

listing and put the requested number as a third number at the end of Delanney's rotary line. Miller testified that she did not inform Delanney that the Yellow Pages advertising would be cancelled. The line that Delanney asked to have cancelled was the listing for D. and D. Enterprises and was not the listing for Delanney. Miller testified that at the time she filled out the order she did not know the Yellow Pages advertisement for Delanney would be cancelled. Miller also testified that she had indicated on a report she had made that the omission of Delanney's listing was due to an error in production. The jury could reasonably infer from these facts that Southwestern Bell did not perform its agreement with Delanney with care; thus, the evidence supports a finding of Southwestern Bell's negligent performance of a duty it owed to Delanney. *Montgomery Ward & Co. v. Scharrenbeck, supra.*

Southwestern Bell additionally complains that the trial court erroneously submitted the limitation of liability question to the jury because public policy issues are not proper for jury consideration and the limitation of liability clause is enforceable as a matter of law. Also, Southwestern Bell claims that the trial court erroneously held that the limitation of liability clause is unenforceable.

The trial court submitted a question to the jury, as follows:

> Do you find from a preponderance of the evidence that there was a disparity of bargaining power between the plaintiff and the defendant in negotiating the contract for Yellow Page advertising.
>
> INSTRUCTION: A disparity of bargaining power exists when one party has no real choice in accepting an agreement limiting the liability of the other party.

Apparently, the trial court submitted this question because Delanney claimed in his petition that the limitation of liability clause is void and unenforceable. The limitation of liability clause reads as follows: "The applicant agrees that the Telephone Company shall not be liable for errors in or omissions of the directory advertising beyond the amount paid for the directory

advertising omitted, or in which errors occur, for the issue life of the directory involved." A similar limitation of liability clause was upheld in a breach of contract suit. *Wade v. Southwestern Bell Telephone Company,* 352 S.W.2d 460 (Tex.Civ. App.—Austin 1961, no writ); *see also Helms v. Southwestern Bell Telephone Co.,* 794 F.2d 188 (5th Cir.1986); *Calarco v. Southwestern Bell Telephone Co.,* 725 S.W.2d 304 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). However, in *Helms* the court followed the case of *Reuben H. Donnelley Corp. v. McKinnon,* 688 S.W.2d 612 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), which held a similar limitation of liability clause in a Yellow Pages advertisement contract unenforceable because the plaintiff's action was based on negligence and the defendant could not limit its liability for negligence. 688 S.W.2d at 616.

■ The trial court's refusal to enforce the limitation of liability clause was proper, and the existence or nonexistence of a disparity in bargaining power was irrelevant because this is a negligence action. While courts may refuse to enforce limitation of liability clauses where there is such a disparity of bargaining power that the contract is one of adhesion, *Allright, Inc. v. Elledge,* 515 S.W.2d 266 (Tex.1974), this contractual provision would not serve to limit Southwestern Bell's damages for its negligent conduct. *Helms v. Southwestern Bell Telephone Co.,* 794 F.2d at 192–94; *Reuben H. Donnelley Corp. v. McKinnon,* 688 S.W.2d at 616. The error, if any, concerning the trial court's submission of the question on the disparity of bargaining power is harmless. Although a disparity in bargaining power would not of itself necessarily limit liability under the circumstances present, no harm resulted from asking the jury that question.

■ Southwestern Bell also maintains that the asking of this question constitutes an impermissible comment on the weight of the evidence in that the accompanying instruction omitted elements of the definition and did not give the jury any real guidance to answer the issue. The trial court has considerable discretion in submitting spe-

cial questions to the jury, and in deciding what instructions are necessary and proper in submitting questions to the jury. *Mobil Chemical Company v. Bell,* 517 S.W.2d 245 (Tex.1974). We need only decide whether the trial court's action was arbitrary or unreasonable. *Markantonis v. Tropoli,* 730 S.W.2d 91, 96 (Tex.App.— Houston [14th Dist.] 1987, writ ref'd n.r.e.).

▬ Southwestern Bell argues that the issue allows the jury to consider the Yellow Pages advertisement only and that its requested instruction, which instructs the jury to consider the parties' relative bargaining power, alternative sources of advertisement and the reasonableness of the challenged term, should have been submitted. Although Southwestern Bell may have requested a proper instruction, the one the trial court submitted is also proper. Where the enforceability of a limitation of liability clause is in issue, the relative bargaining power of the parties is a relevant fact to be determined. *Allright, Inc. v. Elledge,* 515 S.W.2d at 267, 268. And, the instruction submitted by the trial court is a correct statement of the law. *Id.* Clearly, the trial court's instruction was not arbitrary or unreasonable. Moreover, in light of our determination that the contractual limitation of liability would not apply to limit liability for damages caused by tortious conduct, this issue and the issue questioning the exclusion of evidence showing a business necessity for the liability limitation become immaterial.

Southwestern Bell asserts that there is insufficient evidence to support the jury's award of $109,200.00 as damages for lost profits and that the award was so excessive as to shock one's conscience and sense of justice. Southwestern Bell claims insufficient evidence because Delanney's expert witness, who testified that Delanney suffered damages in the amount of $112,-621.00, made a deduction for commissions only and not for other variable expenses. Southwestern Bell complains that Delanney's expert did not take increased selling expenses into account in calculating lost profits and, thus, the amount stated in his

testimony was not a proper basis for the jury award.

Delanney's expert, Rolando Pelaez, testified that during the period that Delanney's listing was omitted from the Yellow Pages, Delanney's closings decreased from 9.68 per month to 7.92 per month while the closings for all other realtors increased. Pelaez testified that, during that period, Delanney would have closed an average of five more homes every month had the ratio of Delanney's closings to other closings remained equal. Based on an estimated additional sixty-five homes Delanney could have closed, at an average value of $55,-000.00, Pelaez calculated $216,000.00 as the amount of commission loss; deducting the amount paid to sales agents leaves a broker's share of $112,621.00.

Southwestern Bell's expert witness, F. Gerome Sweeney, testified that Delanney paid out an average of forty-five percent of his gross commissions to his agents and that such commissions are just one part of selling expenses. Sweeney stated that fifty-nine percent was a three-year average of total expenses, forty-five percent of which is commissions and the rest is other selling expenses. Sweeney also testified, based on Delanney's administrative costs in the years 1980 through 1982, that if Delanney had achieved the sales volume he claims, he would have incurred an additional $10,-000.00 in administrative expenses.

▬ To recover for lost profits, it is not necessary that the loss be shown by exact calculation. It is sufficient that the amount of loss is shown by competent evidence with reasonable certainty. *White v. Southwestern Bell Telephone Co.,* 651 S.W.2d 260 (Tex.1983).

▬ Both parties presented competent evidence of the amount of loss Delanney suffered as a result of the omission of his advertisement from the Yellow Pages listings. It is within the province of the jury to determine which testimony to accept. Thus, it was the jury's prerogative to give whatever credit to the testimony of Pelaez and Sweeney it deemed appropriate. The evidence supports the jury's finding on damages.

We find no reversible error and affirm the trial court's judgment.

CORNELIUS, Chief Justice, concurring.

I concur in the majority opinion, but write separately to emphasize what I believe to be the distinction between tort and contract actions in cases such as this, and why in the narrow and peculiar circumstances of this case the action in tort is permissible.

The distinction is between nonfeasance and misfeasance. The complete *failure to perform* a contract is only a breach of contract, and is not a tort unless the duty imposed by the contract is one which is also imposed by law. *International Printing Pressmen and Assistants' Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729 (1946); W. Keeton, *Prosser and Keeton on the Law of Torts* § 92, at 655–61 (5th ed. 1984). The *negligent performance* of a contract, however, can be a tort as well as a breach of contract. Accompanying every contract is a common law duty to perform the act agreed upon with care, skill and faithfulness, and a negligent failure to observe any of those conditions is a tort as well as a breach of contract. *Coulson v. Lake L.B. J. Municipal Utility District*, 734 S.W.2d 649 (Tex.1987); *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Texas Power & Light Co. v. Barnhill*, 639 S.W.2d 331 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.); *Compton v. Polonski*, 567 S.W.2d 835 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Davis v. Anderson*, 501 S.W.2d 459 (Tex.Civ.App.—Texarkana 1973, no writ); *H.M.R. Construction Co. v. Wolco of Houston, Inc.*, 422 S.W.2d 214 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.); *Westbrook v. Watts*, 268 S.W.2d 694 (Tex.Civ.App.—Waco 1954, writ ref'd n.r.e.); *Panhandle Gravel Co. v. Wilson*, 248 S.W.2d 779 (Tex.Civ.App.—Amarillo 1952, writ ref'd n.r.e.); W. Keeton, *Prosser and Keeton on the Law of Torts* § 92, at 655–61 (5th ed. 1984). As said by Prosser, "the American courts have extended the tort liability for misfeasance to virtually every type of contract where defective performance may injure the *promisee.*" (Emphasis added.) *Id.,* at 660.

If Delanney only had a contract with Southwestern Bell for a Yellow Pages advertisement, his recovery of damages in tort would be unauthorized because there was a *complete* failure to perform that obligation, and the only damage was to the subject matter of *that* contract itself. His recovery can be sustained, however, on the theory that he either had two contracts or one integrated contract which imposed two obligations on Southwestern Bell: (1) the furnishing of telephone service, including rotary lines, and (2) the Yellow Pages advertisement.

Although the mere failure to list Delanney in the Yellow Pages would be nonfeasance or nonperformance, and therefore only a breach of contract, the *negligent performance* of the first obligation (furnishing telephone lines) can be a tort as well as a breach of contract. Since the negligent performance of that contractual obligation proximately caused a loss *other than the subject of that contract,* Delanney can recover in tort for the resulting damage. *See* J. Edgar & J. Sales, *Texas Torts & Remedies* § 1.03(4)(b) (1988).

GRANT, Justice, dissenting.

I dissent. While I agree that negligence may occur in the performance of a contract, I do not agree that the present case presents a tortious action.

The mere fact that the contract was breached through the defendant's negligence does not in and of itself change the action into one in tort. 1 Am.Jur.2d *Actions* § 9 (1962). The form of pleading does not determine whether the action is in tort or contract, but rather the relationship between the parties and the damages sought must be looked to for this determination. It is important that we maintain the proper distinction between tort and contract in Texas, because many substantive rights are dependent upon this distinction. This can be done by looking at the various factors expressly separating these causes of action:

(1) *An action in contract is for the breach of a duty arising out of a contract, while an action in tort is for a breach of duty imposed by law. International Printing Pressmen and Assistants' Union v. Smith*, 145 Tex. 399, 198 S.W.2d 729 (1946). In that case, the Texas Supreme Court stated:

> If an action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract, either by malfeasance or nonfeasance, it is, in substance, an "action on the contract," whatever may be the form of the pleading.

In other words, if the duty to take due care arises from a relationship outside the contract, then the action sounds in tort. *Atlantic & Pacific Railway Co. v. Laird*, 164 U.S. 393, 17 S.Ct. 120, 41 L.Ed. 485 (1896). In the present case, it was the obligation to place the advertisement in the Yellow Pages that was breached, and this duty could not have existed but for the intent set forth in the contract. Therefore, contract law should be the only theory upon which liability can be imposed. *See* W. Keeton, *Prosser and Keeton on the Law of Torts* § 92, at 656 (5th ed. 1984).

(2) *The nature of the injury most often determines which duty or duties are breached. Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex.1986). In the present case, the substance of the cause of action is the recovery of an intangible economic loss flowing directly from the breach of an obligation under the contract. Delanney wanted an advertisement for his floral shop in the Yellow Pages of Southwestern Bell Telephone Company for the purpose of getting business from people reading the advertisement. Thus, the nature of the injury, i.e., the failure to place the advertisement, is the subject of the contract itself, and the action sounds in contract alone.[1]

(3) The concurring opinion offers a third rule: *There is no tort liability for nonfeasance.* This test requires distinguishing misfeasance (or negligent affirmative conduct) from nonfeasance. There is some question as to whether or not Texas courts continue to recognize this difficult distinction. In the case of *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947), the Texas Supreme Court said that "torts may be based on nonfeasance or omissions to act as well as on acts of commission." J. Edgar & J. Sales, 1 *Texas Torts and Remedies* § 103(4)(b) (1988). The results reached in applying the misfeasance-nonfeasance test may depend upon the semantic application of that test, i.e., Did he do it wrong or did he fail to do it right?[2]

The difficulty of applying this test is illustrated by the present case. Southwestern Bell Telephone Company totally omitted Delanney's advertisement. This would seem to be clearly a case of nonfeasance, and therefore there would be no tort liability. However, the concurring opinion does not look to see whether there was actual performance, but instead looks to the reason why Southwestern Bell Telephone Company omitted this advertisement. The fact that there was a misunderstanding and

---

1. There are times when this test is not workable because there is both a breach of contract and a tort which results in the same damages. For example, a breach of a fiduciary duty may be both a tort and a breach of contract. *InterFirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882 (Tex.App.–Texarkana 1987, no writ). In a tortious interference case, the measure of actual damages is the same as for a breach of contract, the court attempting to put the plaintiff in the same economic position he would have been in had the contract not been breached. *Capital Title Co. v. Donaldson*, 739 S.W.2d 384 (Tex. App.–Houston [1st Dist.] 1987, no writ); *Armendariz v. Mora*, 553 S.W.2d 400 (Tex.Civ.App.–El Paso 1977, writ ref'd n.r.e.). Also the damages awardable in a fraudulent misrepresentation case may be on the basis of the loss of the benefit of the bargain or the out-of-pocket measure, both being appropriate recoveries in a breach of contract case. *Leyendecker & Associates, Inc. v. Wechter*, 683 S.W.2d 369 (Tex.1984).

2. Prosser demonstrates the confusion by examples in which failure to blow a whistle or shut off steam was found to be the negligent operation of a train, the failure to repair a gas line was found to be the negligent distribution of gas, the act of discharging an employee was found to be a nonperformance of an employment agreement and the ejection of a theater patron was found to be a nonperformance of an agreement.

a lack of awareness by employees in performing another contract which in turn caused the company to omit the Delanney advertisement does not alter the fact that Southwestern Bell failed to do what it had promised in the contract. This rule is easier to apply to a situation in which there is physical harm to a person or a tangible thing because of the negligent performance of a contract. In that situation there is a breach of a duty imposed by law to perform with reasonable skill and care to avoid injury to others or their property. W. Keeton, *Prosser and Keeton on the Law of Torts* § 92 (5th Ed.1984).

In *Farina v. Southwestern Bell Media, Inc.*, 658 F.Supp. 826 (S.D.Tex.1987), a case in which a publisher failed to perform a contract to place an advertisement in the Yellow Pages, the court said that:

> Misfeasance in the performance of a promise will give rise to a tort action, whereas nonfeasance will not unless there is a duty independent of the contract to do the thing promised.... In other words, complete failure to perform a contract will not give rise to a tort action unless there is intentionally tortious conduct, such as fraud, or the nonfeasance is negligent and results in physical harm, which a person always has a duty to avoid.

In the present case, Delanney's damages were a loss of the expected benefits of the contract itself, and the application of all three tests demonstrates that this is a cause of action based upon contract.

The concurring opinion cites numerous cases for the blanket proposition that accompanying every contract is a common law duty to perform the act agreed upon with care, skill, and faithfulness, and a negligent failure to observe any of those conditions is a tort as well as a breach of contract. I agree that such a common law duty does accompany every contract, but a careful study of the cases cited supports the position that a common law duty was not violated in the present case. In the case of *Panhandle Gravel Co. v. Wilson,*

248 S.W.2d 779 (Tex.Civ.App.–Amarillo 1952, writ ref'd n.r.e.), the court was dealing with a personal injury brought about by a two-pound rock falling from the defendant's gravel truck and going through the windshield of the injured party's vehicle. The personal injury did not involve a party to the contract; however, in performing a contract, a common law duty not to injure was also owed to nonparties. In the case of *Davis v. Anderson,* 501 S.W.2d 459 (Tex.Civ.App.–Texarkana 1973, no writ), an action was brought by a worker who was injured when a ditch in which he was working caved in. Again, this was a personal injury to a person not a party to the contract but to whom a common law duty was owed. The case of *H.M.R. Construction Co. v. Wolco of Houston, Inc.,* 422 S.W.2d 214 (Tex.Civ.App.–Houston [14th Dist.] 1967, writ ref'd n.r.e.), was a suit for contribution, but the underlying tort involved the injury to an employee caused by the collapse of a building. Again, the tort arose from a common law duty not to erect a building which was inherently dangerous. This duty is owed to the public in general.

In the cases of *Coulson v. Lake L.B.J. Municipal Utility District,* 734 S.W.2d 649 (Tex.1987), *Texas Power & Light Co. v. Barnhill,* 639 S.W.2d 331 (Tex.App.–Texarkana 1982, writ ref'd n.r.e.), *Compton v. Polonski,* 567 S.W.2d 835 (Tex.Civ.App.–Corpus Christi 1978, no writ), the respective courts noted in dicta that contracts typically create contractual obligations and implied duties, the breach of which may create liabilities in contract and in tort. All of these cases cite *Montgomery Ward & Co. v. Scharrenbeck, supra,* for this proposition. In the *Scharrenbeck* case, the defendants sent an expert to repair a heater in the Scharrenbeck home. The expert's negligence in repairing the heater caused the home to be destroyed by fire. The defendant had a common law duty to all persons not to damage them or their property by negligently causing a fire. Thus, the damages in the *Scharrenbeck* case were not the loss of an expected benefit under the contract (which was "to repair

and adjust the heater").[3] These cases confirm the need to look to the type of damages incurred and the duty which was violated in order to determine whether the action is in tort or contract.

Litigation involving errors in telephone directories are by no means new to our jurisprudence. At least twenty-two other states found this type of litigation to involve a breach of contract action.[4]

The Corpus Christi Court of Appeals in *Reuben H. Donnelley Corp. v. McKinnon,* 688 S.W.2d 612 (Tex.App.–Corpus Christi 1985, writ ref'd n.r.e.), treated the failure to provide Yellow Pages advertising as a tort of negligence. The following state and federal cases decided in Texas also treated an omission from the telephone book as a contractual breach: *Faber v. Southwestern Bell Telephone Company,* 155 F.Supp. 162 (S.D.Tex.1957); *Russell v. Southwestern Bell Telephone Co.,* 130 F.Supp. 130 (E.D.Tex.1955); *Calarco v. Southwestern Bell Telephone Co.,* 725 S.W.2d 304 (Tex.App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Martin v. Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180 (Tex.App.–Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Goldson v. Southwestern Bell Telephone Co.,* 659 S.W.2d 902 (Tex.App.–Corpus Christi 1983, no writ); and *Wade v.*

*Southwestern Bell Telephone Co.,* 352 S.W.2d 460 (Tex.Civ.App.–Austin 1961, no writ).

The Court in *Martin v. Lou Poliquin Enterprises, Inc., supra,* held that when the DTPA is involved, a limitation-of-liability clause cannot be used to avoid damages available under that Act for deceptive trade practices. The present case was initiated under pleadings which included allegations of DTPA violations; however, no issues were submitted on that basis and the trial court in its judgment specifically excludes any DTPA violations.[5]

The question of the validity of a limitation clause of this nature in the contract was raised in *White v. Southwestern Bell Telephone Co.,* 651 S.W.2d 260 (Tex.1983), a case which involved the telephone company's incorrect listing of a florist's telephone number in the Yellow Pages. However, the Supreme Court found that this point was not fully briefed and that it could be addressed after being remanded.

Delanney pled that the limitation clause was against public policy and unenforceable. The jury found that there was a disparity of bargaining power between the parties to the suit.[6] Certainly, a disparity

---

**3.** If the facts had been altered so that Schrarrenbeck had hired the defendant to repair a dangerous defect in the heater and through the expert's negligent efforts the heater remained defective and started a fire, then the action could be in either tort or contract.

**4.** *McTighe v. New England Telephone and Telegraph Co.,* 216 F.2d 26 (2d Cir.1954); *University Hills Beauty Academy v. Mountain States Telephone and Telegraph Co.,* 38 Colo.App. 194, 554 P.2d 723 (1976); *Ed Fine Oldsmobile, Inc. v. Diamond State Telephone Co.,* 494 A.2d 636 (Del.1985); *Southern Bell Telephone and Telegraph Co. v. C & S Realty Co.,* 141 Ga.App. 216, 233 S.E.2d 9 (1977), *overruled in part on other grounds, Georgia–Carolina Brick & Tile Co. v. Brown,* 153 Ga.App. 747, 266 S.E.2d 531 (1980); *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.,* 95 Ill.2d 68, 69 Ill. Dec. 183, 447 N.E.2d 400 (1983); *Woodburn v. Northwestern Bell Telephone Co.,* 275 N.W.2d 403 (Iowa 1979); *Louisville Bear Safety Service v. South Central Bell Telephone Co.,* 571 S.W.2d 438 (Ky.1978); *Wilson v. Southern Bell Telephone & Telegraph Co.,* 194 So.2d 739 (La.App. 1967); *Baird v. Chesapeake and Potomac Telephone Co.,* 208 Md. 245, 117 A.2d 873 (1955);

*Warner v. Southwestern Bell Telephone Co.,* 428 S.W.2d 596 (Mo.1968); *Cunha v. Ohio Bell Telephone Co.,* 26 Ohio Misc. 267, 271 N.E.2d 321 (1970); *Smith v. Southern Bell Telephone and Telegraph Co.,* 51 Tenn.App. 146, 364 S.W.2d 952 (1962); *Allen v. General Telephone Co. of the Northwest,* 20 Wash.App. 144, 578 P.2d 1333 (1978).

**5.** The judgment contained the following language:

No issues were submitted to the Jury on plaintiff's allegations surrounding deceptive trade practices by defendant, SOUTHWESTERN BELL TELEPHONE COMPANY. At the clost (sic) of plaintiff's case, this Court was to direct a verdict for lack of proof concerning same.

**6.** Although Section 2.302 of the Uniform Commercial Code may not be applicable to this transaction because the sale of goods was not involved, it offers some guidance to the determination of unconscionable clauses. It provides that the determination of unconscionability is a matter of law to be made by the court. Tex. Bus. & Comm.Code Ann. § 2.302 (Vernon 1968).

of bargaining power standing alone does not void a contract or a clause in a contract, but it is one element in determining if the clause or contract is unconscionable.[7]

In the interest of justice, I would remand this case to the trial court to be decided on the basis of a contract action.

---

7. In determining whether a contract is unconscionable, the court must look to the entire atmosphere in which the agreement was made, the alternatives, if any, which were available to the parties at the time of the making of the contract, the non-bargaining ability of one party, whether the contract is illegal or against public policy, and whether the contract is oppressive or unreasonable. *Wade v. Austin,* 524 S.W.2d 79 (Tex.Civ.App.–Texarkana 1975, no writ).