CAPITAL TITLE CO., INC., Appellant,

v.

Darrell DONALDSON, Appellee.

No. 01–86–0254–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1987.

Paul J. McConnell, III, Ben A. Baring, Jr. De Lange, Hudspeth, Pitman & Katz (on appeal only), Houston, for appellant.

Darryl W. Malone, Woodard, Hall & Primm, Houston, for appellee.

Before DUGGAN, LEVY and HOYT, JJ.

ON MOTION FOR REHEARING

DUGGAN, Justice.

On motion for rehearing, our opinion issued April 30, 1987, is withdrawn and the following is substituted.

Following a jury verdict, the trial court entered judgment awarding actual and exemplary damages to appellee, Darrell Donaldson ("Donaldson"), a homeowner-seller, in his suit against appellant, Capital Title Company, Inc. ("Capital Title"), which had acted as escrow agent in connection with a contract of sale. The appellant asserts 37 points of error; the appellee, as cross-appellant, urges one cross-point.

On February 14, 1984, Bayou Park Corporation ("Bayou Park"), through its president, Peter T. Serebrenik ("Serebrenik"), made an offer to purchase Donaldson's West University house for $175,000, with a $3,000 earnest money deposit. The offer was made conditional upon Donaldson's acceptance by 5 p.m. the next day.

On February 15, 1984, Donaldson made a counter-offer for $180,000, with a requirement of a $5,000 earnest money deposit and acceptance by Bayou Park by 5 p.m. on the following day, February 16, 1984. This counter-offer was delivered to Bayou Park on February 15, 1984. No acceptance by Bayou Park was ever communicated to Donaldson until February 24, 1984. In the interim, Donaldson was approached by Joe and Peggy Koen, who, through their real estate agent, offered to purchase Donaldson's house for $204,000. Donaldson accepted the Koens' offer and entered into a contract for sale on February 20, 1984.

On February 24, 1984, Serebrenik informed Donaldson that Bayou Park had accepted Donaldson's contract offer and had deposited the required earnest money with Capital Title on February 14, 1984. Donaldson called upon Capital Title to verify Serebrenik's information, and was told that Bayou Park's check for $5,000 had been received by Capital Title on February 14, 1984. Because Donaldson had not even made the counter-offer until February 15, 1984, he attempted to question various employees of Capital Title to ascertain the actual date when the earnest money check had been received. Capital Title's employees were uncooperative.

In the meantime, the Koens had deposited their earnest money check with Commonwealth Title ("Commonwealth"). While conducting a title search, Commonwealth became aware of the possible existence of another contract. On February 28, 1984, attorneys for Capital Title, purporting to represent Bayou Park, informed Commonwealth of an earlier contract and escrow deposit, dated February 14, 1984. On April 2, 1984, Bayou Park sued Donaldson, seeking specific performance or, alternatively, damages for breach of the February 14, 1984 contract. Bayou Park recorded a lis pendens against Donaldson's property.

On April 5, 1984, the Koens signed an agreement with Donaldson terminating their February 20, 1984 earnest money contract.

Later, during discovery, Donaldson learned that Capital Title employees had given him false information regarding the date of receipt of Bayou Park's earnest money check. Donaldson filed a counterclaim against Bayou Park and third-party actions against both Peter Serebrenik and Capital Title, claiming tortious interference with a contract and breach of fiduciary duty by Capital Title. Thereafter, Bayou Park, Serebrenik, and Donaldson non-suited their claims against each other. After realignment of the parties, Donaldson became plaintiff, and Capital Title became defendant in the case. At trial, after the close of all the evidence, Donaldson moved for leave of court to amend his pleadings to raise additional causes of action for fraud and breach of implied and express contract. The motion was granted.

The case was submitted to the jury on 13 special issues, each of which was answered in Donaldson's favor. The jury awarded Donaldson actual damages of $30,880 and exemplary damages of $80,000, both amounts being in excess of Donaldson's pleadings. Thereafter, Donaldson moved for post-verdict leave to amend his pleadings to conform to the jury's award of

damages. The motion was denied. Instead, judgment was entered for Donaldson against Capital Title for $24,000 in actual damages and $75,000 in punitive damages.

Appellant Capital Title now challenges each special issue with several points of error.

By eight points of error (3, 4, 7, 10, 16, 21, 26, and 31), Capital Title objects to defects in the form of the special issues. Specifically, it objects to: 1) the failure to include all elements of a cause of action in issues one and two; 2) improper definitions in issues three, five, seven, and nine; and 3) an improper instruction in issue eleven.

Appellant's only objection at trial to the charge was as follows:

APPELLANT'S COUNSEL: I would object to the instruction on fiduciary duty as well as the issue on fiduciary duty which is Special Issue No. 3, together Special Issue No. 4, for the reason that the evidence fails to support a finding of any fiduciary duty on the part of Capital Title Company. There is insufficient evidence to support that duty.

I have no other objections to the charge.

■ A party's objection to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint about an instruction, issue, definition, or explanatory instruction, on account of any defect, omission, or fault in pleading, is deemed waived unless specifically included in the objection. Tex.R. Civ.P. 274. Failure to make a timely objection to the submission of special issues, definitions, and instructions precludes review of the charge on those particulars on appeal. *Brown v. Am. Transfer & Storage Co.,* 601 S.W.2d 931, 938 (Tex.1980).

■ Accordingly, the matters complained of in appellant's above points of error were not properly preserved for review. Points of error 3, 4, 7, 10, 16, 21, 26, and 31 are overruled.

Appellant's 29 remaining points of error urge that the trial court erred either: (1) in submitting each of the 13 special issues, because there was "no evidence" or "insufficient evidence" to support the submission;

or (2) in denying its motions for instructed verdict or for judgment non obstante veredicto on the grounds that "no evidence" existed to support a judgment on any of the special issues submitted.

■ An "insufficient evidence" point is not applicable to the question of whether special issues should be submitted to the jury, *Metropolitan Life Ins. Co. v. Duncan,* 566 S.W.2d 351 (Tex.Civ.App.—Fort Worth 1978, no writ), because a trial court may refuse an issue only if there is "no evidence raising such issue." *Burke Wiley, Inc. v. Lenderman,* 545 S.W.2d 226 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). But in its motion for new trial and by its points of error, appellant also asserts that an affirmative finding by the jury to each special issue was against the great weight and preponderance of the evidence.

Because these points of error require evidentiary review, we will consider each with its related special issue. When reviewing a "no evidence" complaint, the appellate court must consider only the evidence and inferences therefrom that tend to support the findings and disregard any evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). When considering factual insufficiency questions, or points asserting that a jury's affirmative finding is against the great weight and preponderance of the evidence, we must view the entire record in the light most favorable to the jury finding. The finding in each instance will prevail unless such review reveals either that no probative evidence supports it or that it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661–62 (1951).

## FRAUD AND MISREPRESENTATION

In answers to Special Issues Nos. one and two, the jury found that Capital Title committed fraud against Donaldson by misrepresenting the date of its receipt of Bayou Park's earnest money contract and check. Capital Title's first and fifth points of error assert that "no evidence" existed

to support submission of these issues; the second and sixth points assert that the jury's affirmative findings were against the great weight and preponderance of the evidence.

To support a judgment based on the jury's affirmative findings on a cause of action, there must be some evidence of probative force on each of the elements of the cause of action. *Burke Wiley, Inc. v. Lenderman*, 545 S.W.2d at 226.

The essential elements of fraud are: (1) that a material representation was made; (2) that it was false; (3) that, when the representation was made, the speaker knew it was false, or that he made it recklessly without knowledge of its truth, and as a positive assertion; (4) that the speaker made the representation with the intention that it should be acted on in reliance upon the representation; (5) that the party relied upon it; and (6) that the party thereby suffered injury. *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex.1977).

■ In the instant case, the special issues and the court's charge omitted two of these elements. The jury was asked to find the existence of the misrepresentations and was instructed as to all other elements except: (1) whether those misrepresentations were material; and (2) whether Donaldson relied upon them to his detriment. Where elements of a cause of action are omitted from the charge, as long as some evidence exists supporting those elements, and the missing elements are, as in the instant case, "necessarily referable" to the particular theory of recovery from which they were omitted, the appellate court on review will deem that the trial court found those elements in accordance with its judgment. *Superior Trucks, Inc. v. Allen*, 664 S.W.2d 136, 144 (Tex.App.— Houston [1st Dist.] 1983, writ ref'd n.r.e.); Tex.R.Civ.P. 279.

Appellant had notice of the asserted fraud ground of recovery, but failed to object or to request the submission of those missing elements. It therefore is deemed to have consented to the court's affirmative findings in support of the judgment.

■ There was some evidence presented at trial to support each element of the fraud cause of action, and the jury's findings were not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Both the deposition testimony of Yolanda Roy, a Capital Title employee, and the documentary evidence showed that Ms. Roy applied the date February 14, 1984, to the receipt for Bayou Park's escrow check in the amount of $5,000. Both parties stipulated, prior to trial, that Donaldson's counter-offer, changing his earnest money requirement from $3,000 to $5,000, was made on February 15, 1984. Ms. Roy's writing of the receipt, dated February 14, 1984, was a representation that could only have been false when made, even if made on that date, because it reflected things not in existence until the day afterward.

There was evidence that Bayou Park's check was actually deposited on February 29th, and that it was Capital Title's policy to deposit all checks received that very day or the following day, if the check was received late in the afternoon. Evidence indicated that Bayou Park's checks sequentially numbered before and after the $5,000 check to Capital Title were dated from 10 to 15 days later than February 14.

Ms. Roy also testified that on February 24th, she told Donaldson that the contract was received on February 14th. Ms. Roy admitted in her deposition that she had been mistaken about the correct date of receipt. She testified that the contract was actually received on February 17th, but that neither she nor anyone else at Capital Title, to the best of her knowledge, had ever told Donaldson about the mistake. Additionally, Capital Title, through its attorneys, wrote to Commonwealth Title explaining that the contract and check had been received on February 14th, and as such was necessarily prior in time to any contract Commonwealth had with Donaldson.

All evidence indicates that Capital Title either knew the February 14th date was false or had a reckless disregard for the truth. Capital Title's subsequent conduct

in repeating the misrepresentation indicates that Capital Title intended for Donaldson and Commonwealth to rely on that misrepresentation.

Capital Title argues that no proof exists to support the materiality of the misrepresentation. It claims that the deadline for acceptance was 5 p.m. on February 16; therefore, a misrepresentation that the contract was received on February 14th would not be material. However, the language of Bayou Park's acceptance of the counter-offer provided as follows:

> As earnest money, Purchaser has *this day* placed the sum of $5,000 together with a copy of this agreement in escrow with Capital Title Company. (Emphasis added.)

At trial, Donaldson claimed that the quoted and emphasized wording of the counter-offer provision made the placing of the funds in escrow a condition precedent to any contract. Therefore, the misrepresentation was of a material fact, indicating to Donaldson that the condition had been satisfied and that the contract had been accepted prior to the deadline.

Capital Title also argues that, even if a misrepresentation was made, Donaldson did not rely upon it. It asserts that Donaldson's position at trial was that no contract ever existed as far as he was concerned. Donaldson knew the February 14th date was false and thus could not have reasonably relied on it. However, though Donaldson knew the contract could not have been received on the 14th, he had no way of knowing that it had not been received prior to the deadline of 5 p.m. on February 16th. The parties stipulated that no communication took place between Donaldson and Bayou Park or Capital Title until February 24th. On that date, Donaldson was told that the contract was received on the 14th. While he knew that the statement was false, he could not, at that time, disprove that a valid contract came into existence before the 16th deadline. It was not until April, after Bayou Park sued him and during the discovery process, that Donaldson learned that the check had not been received, in all probability, until after the

24th and maybe even as late as the 28th. Donaldson was forced to rely on Capital Title's false claim that the contract and check had been received prior to deadline. He testified that he informed the Koens' agent that a problem existed. On February 28th, Capital Title again misrepresented the date to Commonwealth, which in reliance ceased all further work on the Koen/Donaldson contract. These misrepresentations led to the eventual termination of the Koen contract, resulting in the loss of that sale for Donaldson.

The evidence is sufficient to support a cause of action for fraud. Appellant's first, second, fifth, and sixth points of error are overruled.

## BREACH OF FIDUCIARY DUTY

In answer to Special Issues three through eight, the jury made affirmative findings that Capital Title breached its fiduciary duty to Donaldson based on: (1) its failure to give him accurate information concerning Bayou Park's earnest money contract and check; and (2) its placing of the interests of Bayou Park ahead of the interests of Donaldson. The jury also found that such breaches were the proximate cause of injuries to Donaldson.

Capital Title's points of error 14, 17, 19, 22, 24, and 27 assert that "no evidence" supported submission of these special issues on fiduciary duty because Donaldson failed to show that Capital Title owed any such duty. Capital Title's points of error 15, 18, 20, 23, 25, and 28 assert by alternative language that the jury's affirmative findings are against the great weight and preponderance of the evidence.

■ An escrow agent owes a fiduciary duty to both parties to a contract. *Chilton v. Pioneer Nat'l Title Ins. Co.*, 554 S.W.2d 246, 249 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). That fiduciary duty consists of: (1) the duty of loyalty; (2) the duty to make full disclosure; and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it. *City of Fort Worth v. Pippen*, 439 S.W.2d 660 (Tex.1969).

■ The parties stipulated that Capital Title was the escrow agent, that Capital Title opened a guaranty file, and that it deposited an escrow check on February 29, 1984. Capital Title's controller testified that Capital Title had a duty as an escrow agent not to take sides. He confirmed that the Bayou Park/Donaldson contract provided that Donaldson would pay for the title policy and that Capital Title would make no money unless the contract closed. Capital Title admitted that it did not inform Donaldson of Bayou Park's acceptance prior to the February 20th contract between Donaldson and Koen, but that it did inform Bayou Park of Donaldson's acceptance of the Koen contract. Attorneys for Capital Title, by letter of February 28, 1984, falsely represented that a check and contract were received prior to the Donaldson/Koen contract. Capital Title took actions that benefited itself and Bayou Park, and that ultimately deprived Donaldson of the more profitable sale to the Koens.

There was sufficient evidence of probative force to support findings of Capital Title's breaches of all three of the fiduciary duties, and the jury's affirmative findings were not so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellants points of error 14, 17, 19, 22, 24, and 27 ("no evidence"), and points of error 15, 18, 20, 23, 25, and 28 ("great weight and preponderance"), are overruled.

## TORTIOUS INTERFERENCE WITH THE DONALDSON/KOEN CONTRACT

In answer to Special Issues Nos. 9 and 10, the jury made affirmative findings that Capital Title tortiously interfered with the Donaldson/Koen contract, and that such interference was the proximate cause of Donaldson's injuries. Capital Title's points of error 8 and 11 assert that "no evidence" supported the submission of these issues. Points of error 9 and 12 assert that the jury's affirmative findings were against the great weight and preponderance of the evidence.

■ The elements of a cause of action for tortious interference with a contract are: (1) that the defendant maliciously interfered with the contractual relationship; and (2) the interference was without legal justification or excuse. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex.1984). In such a case, malice is an act without excuse or just cause. *Id.* at 107.

■ The record reflects that the attorneys for Capital Title, by their letter of February 28, 1984, informed Commonwealth that the Bayou Park/Donaldson contract and earnest money check deposited with Capital Title were received on February 14, 1984, and that the contract was prior in time to the Donaldson/Koen contract deposited with Commonwealth. The letter indicated that Capital Title, through its attorneys, would stand by the Bayou Park contract and would protect the rights of Bayou Park as against Donaldson and Commonwealth.

Capital Title argues on appeal that there was "no evidence" that its interference, if any, proximately caused injury to Donaldson. A Commonwealth employee testified that Commonwealth put the Donaldson/Koen file on hold when it first learned of the possibility of another contract through its initial title search, but that it did not totally "put a halt" to the file until after the notice letter from Capital Title of February 28, 1984.

Commonwealth informed the Koens of a problem through Mary Henderson, the real estate agent. In her deposition testimony, Mrs. Koen stated that she and her husband felt their contract was a valid one, but that they had been told that theirs was "the second dated contract." She testified at the deposition:

As I understand it, what happened was they were doing a title search and they found a recent search as well on the property. And they called that company, which would have been Capital, and they said, oh, yes we've done a title search. We have a contract on the house. And Commonwealth said, that's very interesting, because we also have a contract on the house.

Donaldson testified that the Koens were very cooperative up until the time the letter was received.

Capital Title argues that the Koens signed the termination agreement because of Bayou Park's lawsuit and not because of Capital Title's notice to Commonwealth. However, there is evidence from which the jury could also have concluded that the Koens based their decisions on several factors, including threat of litigation, inconvenience, time, and necessity. Mrs. Koen was four months pregnant, and they needed to get a house as soon as possible. Mrs. Koen testified that she and her husband had already decided to sign a termination agreement at least a week prior to the filing of Bayou Park's lawsuit and the lis pendens on the property.

Capital Title's letter of February 28, 1984, was written to protect Bayou Park's purported contract of February 14, 1984 (which date Capital Title knew to be false), and was therefore without legal justification or excuse; in effect, the letter served to terminate the Donaldson/Koen contract, thereby resulting to Donaldson in the loss of the sale.

There was sufficient evidence of probative force to support the cause of action for the tortious interference with the contract, and the jury's affirmative findings were not so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant's points of error 8, 9, 11, and 12 are overruled.

## DAMAGES

In answer to Special Issues Nos. 11, 12, and 13, the jury awarded Donaldson $30,880 in actual damages and $80,000 in exemplary damages. Capital Title's points of error 29, 32, and 34 assert that "no evidence" supported the submission of these special issues. Points of error 30, 33, and 35 assert that the jury's affirmative findings are against the great weight and preponderance of the evidence. By point of error 36, appellant asserts that the exemplary damages awarded by the jury in Special Issue No. 13 were excessive.

Damages must be established with reasonable certainty, but the amount need not be certain. *Hughes v. Northwest Medical Center, Inc.*, 680 S.W.2d 838, 842 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). It is not necessary for a party to plead the measure of damages; rather, the petition must allege sufficient facts to establish a cause of action from which the court can determine the proper measure of damages. *United Ventures, Inc. v. Samsill Brothers Plastic Corp.*, 540 S.W.2d 577 (Tex.Civ.App.—Fort Worth 1976, no writ).

 Where a party has alleged tortious interference with a contract, the measure of actual damages is the same as for breach of contract, viz., to put the plaintiff in the same economic position he would have been in had the contract not been breached. *Gulf Atl. Life Ins. Co. v. Hurlbut*, 696 S.W.2d 83, 101 (Tex.App.—Dallas 1985, writ granted).

 Donaldson's evidence of actual damages included: (1) the $24,000 difference between contract price of the Bayou Park offer and the contract price of the Koen offer, less the fees he saved for closing, survey, inspection, broker's commission, and title policy; (2) the taxes he was unable to save by rolling his capital gains from the sale of the house into the purchase of his new house within two years; (3) an estimated $24,000 in interest paid on the house note; (4) attorney's fees and court costs of approximately $35,000; (5) and the approximately $40,000 he could have made in interest from the investment of the profit from the Koen sale. Donaldson's testimony as to the nature and extent of his damages was admitted into evidence without objection.

Capital Title argues that Donaldson could have mitigated his damages. He was questioned on cross-examination regarding an offer by Serebrenik to allow the Koens to buy the house, if Donaldson would pay Serebrenik's attorneys' fees. Donaldson testified that he did not remember any such offer, and that had it been made, he would have accepted it. He did admit that Serebrenik offered to purchase the house for the $180,000 after the Koen contract was

terminated, but Donaldson said he refused since Serebrenik would not agree to reimburse him for his expenses.

There was sufficient evidence of probative force to support submission of the issues on Donaldson's injuries, and the jury's affirmative findings were not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Appellant's points of error 29 and 30 are overruled.

In response to Special Issue No. 12, the jury found that the conduct of Capital Title Company toward Donaldson was "actuated by ill will, spite, evil motive, or wanton disregard" for his rights, and this finding was the predicate for the award of exemplary damages in Special Issue No. 13.

As discussed throughout, the lack of legal excuse or justification for the fraudulent misrepresentation, tortious interference, and breach of fiduciary duty by Capital Title and its employees, was probative evidence of the malice required to support submission of Special Issue No. 12. The jury's finding of malice was not so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant's points of error 32 and 33 are overruled.

Appellant's point of error 34 asserts that "no evidence" existed to support submission of Special Issue No. 13. Point of error 35 asserts that the jury's finding of $80,000 in exemplary damages was against the great weight and preponderance of the evidence. Point of error 36 asserts that such answer was excessive.

The evidence was probative of the fact that Capital Title knew the falsity of its representation that the contract and check were received on the 14th of February. Further, Capital Title made no effort to disclose this falsity to Donaldson, but instead deposited the escrow check when it arrived and took steps to protect Bayou Park's purported contract in order to benefit from the issuance of a title policy, a policy for which Donaldson would have been charged the fee. Therefore, the trial court did not err in submitting the issue of exemplary damages. Appellant's point of error 34 is overruled.

■■■ Where the amount of exemplary damages is contested, the Texas Supreme Court has directed that both the trial and the reviewing court determine whether a "reasonable relationship" exists between exemplary and actual damages, considering the particular facts of the case and weighing: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Tatum v. Preston Carter Co.*, 702 S.W.2d 186, 188 (Tex.1986).

This Court has held:

[T]he question of the measure of exemplary damages comes under the general rule that where the law furnishes no legal measure of damages and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury, and unless the award is so large as to indicate that it is a result of passion, prejudice, or corruption, or that the evidence has been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal.

*Costa v. Storm*, 682 S.W.2d 599, 604–605 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Under the "reasonable relationship" test, it is evident that the jury considered evidence of three tortious acts reflecting a knowing false misrepresentation and attempt to defraud and deprive Donaldson of his rights under the Donaldson/Koen contract.

We conclude that the jury's finding of $80,000 exemplary damages was not so against the great weight and preponderance of the evidence as to be manifestly unjust. Appellant's point of error 35 is overruled.

Appellant next urges that the amount of exemplary damages awarded is excessive. Exemplary damages must be in reasonable proportion to actual damages, but no set rule or ratio exists between the amount of

actual and exemplary damages which may be considered reasonable. *Southwestern Inv. Co. v. Neeley,* 452 S.W.2d 705 (Tex. 1970). This Court has upheld an award with a ratio of exemplary damages to actual damages of 12.5 to 1. *K–Mart Corp. Store # 7441 v. Trotti,* 677 S.W.2d 632, 640 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The jury award of exemplary damages in this case is 2.5 to 1, is not excessive, and does not show evidence of bias and passion on the part of the jury. Point of error 36 is overruled.

There remain only appellant's points of error 13 and 37, which assert that the trial court erred, first, in denying appellant's motion for instructed verdict, and second, in refusing its motion for judgment non obstante veredicto.

These motions are properly granted only where no evidence exists of any probative nature to support a party's cause of action or an affirmative jury award. *Jones v. Tarrant Util. Co.,* 638 S.W.2d 862, 865 (Tex.1982). *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 777 (Tex.1974). We have held that there is sufficient evidence to support the grounds of recovery and the jury's findings. Points of error 13 and 37 are overruled.

### APPELLEE'S CROSS–POINT

Appellee/cross-appellant Donaldson's sole cross-point asserts that the trial court erred in failing to grant in its entirety his motion to amend his pleadings to conform to the verdict and to enter judgment on the verdict.

In argument, he urges that the trial court erred: (1) in entering judgment for actual damages of $24,000 instead of $30,-880, as found by the jury; (2) in entering judgment for punitive damages of $75,000, instead of $80,000, as found by the jury; and (3) in refusing prejudgment interest.

At the close of evidence, the trial court granted Donaldson, as third-party plaintiff, leave to file a third amended petition to include recovery under the theories of breach of implied and express contract and fraud based on the evidence presented at trial. No motion was made to increase the amount of damages pled in the second amended petition. When appellee filed his third amended petition, the maximum amount of actual damages was omitted and the exemplary damages remained at $75,-000.

Donaldson thereafter sought leave to file a fourth amended third-party petition in a post-verdict pleading styled "Darrell Donaldson's Motion To Amend Pleadings and To Enter Judgment On The Verdict." The instrument's title and content consistently show the instrument to be a combination of motions to amend pleadings and to enter judgment.

The amending portions of the motion sought leave to amend Donaldson's pleadings to seek actual damages in the amount of $30,880 and exemplary damages in the amount of $80,000, both as found by the jury in answers to special issues. No leave was sought to amend Donaldson's pleadings to seek prejudgment interest.

By a separate paragraph, Donaldson moved to enter judgment "in the amounts set forth in the proposed final judgment attached hereto as Exhibit A." The judgment entered recited that the trial court denied Donaldson leave to file his fourth amended third-party pleading "in order to cause his pleadings to conform to the evidence and the jury's verdict by seeking $30,880 in actual damages and $80,000 in exemplary damages...."

Abuse of discretion is the proper test to govern the allowance or refusal of a trial or post-trial amendment of pleadings to meet proof. *Texas Indus., Inc. v. Lucas,* 634 S.W.2d 748, 759 (Tex.App.—Houston [14th Dist.] 1982), *rev'd on other grounds,* 696 S.W.2d 372 (Tex.1984); *Lightner v. McCord,* 151 S.W.2d 362 (Tex.Civ.App.— Amarillo 1941, no writ).

We find no abuse of discretion in the trial court's refusal to allow a post-verdict amendment as to actual and punitive damages, especially after the court had allowed a third amendment of Donaldson's pleadings at the conclusion of the evidence, at which time Donaldson first asserted two of the four theories upon which he tendered jury issues.

As to prejudgment interest, our Texas Supreme Court has reiterated in its recent

**394**

decision in *Benavides v. Isles Const. Co.*, 726 S.W.2d 23 (Tex.1987), that

> [In *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985)] we did not dispense with the pleading requirement for prejudgment interest sought at common law, nor did we suspend Rule 301 which requires the judgment to conform to the pleadings. *See* Tex.R.Civ.P. 301.

*Id.* at 25.

While third-party plaintiff Donaldson clearly prayed for prejudgment interest in earlier pleadings, he did not do so in either his operative third amended third-party petition or in his motion for leave to file his post-verdict fourth amended petition. No request for prejudgment interest appears in those portions of his post-verdict motion that seek leave to amend his petition. That part of his pleading that moved to enter judgment asserted that Donaldson was entitled to judgment in the amounts set forth in the proposed final judgment attached as "Exhibit A." Likewise, the prayer of the combined motion for leave to amend pleadings and motion to enter judgment made no request for prejudgment interest, but simply incorporated "Exhibit A" by reference.

The "Exhibit A" referred to, cross-appellant's proposed form of judgment, did not use the clear words "prejudgment interest," but purported to award "the sum of $110,880 [the sum of the requested $30,-880 actual damages and $80,000 exemplary damages] together with *interest on said sum* at the rate of ten percent (10%) per annum, compounded daily (based on a 365-day year) from March 2, 1984, which interest totals $21,936.93." (Emphasis added.) We hold that such recitations in a proposed form of judgment are not the equivalent of a motion for leave to amend pleadings to request prejudgment interest.

Accordingly, cross-appellant Donaldson's cross-point is overruled. The trial court's judgment is affirmed.