**Larry D. PACK et ux and Joe Embry, Appellants,**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF TYLER, Appellee.**

No. 12–89–00289–CV.

Court of Appeals of Texas, Tyler.

Dec. 6, 1991.

Rehearing Denied April 27, 1992.

John Trube, John Brumbelow, Tyler, for appellants.

James S. Robertson, Jr., Tyler, for appellee.

RAMEY, Chief Justice.

This is an appeal from a summary judgment in favor of First Federal Savings & Loan Association of Tyler ("First Federal"), arising out of an unconsummated sale of residential realty. The owners of the property, William D. Wood and his former wife, Geneva Sue Wood, both realtors, had two earnest money contracts for the sale of the property. Appellants Larry D. Pack ("Pack"), and wife, Virginia L. Pack were the buyers on the first contract of sale; the appellant Joe Embry ("Embry") was the buyer on the second. The Woods were defendants below, but are not parties to this appeal. The summary judgment evidence consisted of affidavits by Embry and Joe Hobson ("Hobson"), Vice President of First Federal, and the depositions of Pack and his wife, Hobson, Embry, Geneva Sue Wood and William D. Wood. We will affirm the summary judgment.

Pack and his wife sued the Woods, Embry and First Federal for damages for tortious interference with Pack's contract with the Woods as well as deceptive trade practices. Embry filed a counter-claim against Pack and a cross-action against the other original defendants alleging deceptive trade practices, the abuse of a fiduciary responsibility, misrepresentation due to a conflict of interest, negligence and gross negligence, fraud and an absence of fair dealing. Thereafter, appellee filed its motion for summary judgment that Pack and Embry take nothing in their suits against it. First Federal was granted its summary judgment; the remaining causes of action were severed.

The first contract was executed on September 3, 1988, by Geneva Sue Wood, as seller, to the Packs, for the total sales price of $58,797.66. The contract recited that the loan balance to be assumed was $51,797.77 and that Pack would also pay $3,500 to each of the Woods. When presented with the Wood/Pack Earnest Money Contract, First Federal advised the parties that the loan balance recited in that contract was overstated in the amount of $1,900. In the subsequent negotiations stemming from this mistake, Wood and Pack disagreed on their respective financial obligations at closing, *E.g.*, which party was responsible to pay the delinquent loan balance and which must pay certain unspecified closing costs; at closing, the Packs' cash obligations might have been increased by as much as $4,000 under one construction of the corrected contract. A further contractual impediment was that William D. Wood, the former husband of Geneva Sue Wood, who originally executed the Wood/Pack agreement as seller, subsequently signed the Pack contract but made three handwritten changes to the instrument; there was no written acceptance of these amendments by the original parties to the contract.

The Wood's residence was appraised at $80,000. The property had been posted for foreclosure sale on Tuesday, October 2, 1988. Closing of the Wood/Pack property sale was scheduled for the preceding Friday morning, September 30, 1988. This closing was canceled because of the failure of the contracting parties to agree upon their financial obligations as well as Mr. Pack's alleged representations to Mr. Wood

that he could not pay the additional cash consideration.

Later on the same day, September 30, both of the Woods and Mr. Embry came to First Federal's offices having previously executed the second contract of sale for the property, a Lease/Purchase Contractual Agreement (on an identical printed form as the Wood/Pack Earnest Money Contract) which agreement was recited to be:

[A] SECOND or Back Up Contract behind the Wood to Pack contract now pending at First Federal Savings and Loan Association in Tyler, Texas. If the Wood to Pack contract closes, this contract is null and void and all of Embry's earnest money will be refunded.

At this September 30 meeting, the Woods delivered to First Federal two cashiers' checks, payable to First Federal, with the Woods as remitters. Embry had previously purchased these checks from a third-party financial institution. The checks payable to First Federal reinstated the Woods' house loan by paying the delinquent balance on the note as well as other closing expenses; the legal expenses incurred in posting the property for foreclosure were also reimbursed. Embry, thereafter, went into possession of the property and has, to the time of the summary judgment hearing, made the monthly payments to First Federal on this house loan on behalf of the Woods. No title to the realty has been conveyed to Embry.

Both appellants' claims against First Federal relate to that conversation on September 30, 1988 at First Federal's offices between the Woods, Embry and Hobson. Embry asserts that during this conversation, (1) Hobson agreed with Mr. Wood's previously-stated opinion that Pack's prior Earnest Money Contract was void, (2) that neither Pack nor anyone else had a claim on this property, and (3) that First Federal would make Embry a new assumption loan when he concluded his purchase of this property.

Since Pack was the only party other than Embry who has made a claim to the property, the first two alleged representations by Hobson pertain to the same issue: the via-

bility of Pack's contract with the Woods. The third representation, First Federal's promise to make a loan to Embry, is undisputedly predicated upon a concluded sale of the property to Embry, which sale has not yet occurred. Thus, Hobson's only comment at the September 30 conference pertinent to this appeal was his alleged statement regarding the validity of the Pack contract.

Embry contends that although he had executed the Wood to Embry Lease/Purchase agreement prior to the Hobson meeting and also had previously procured the two cashiers' checks payable to First Federal in performance of the executed contract, he, nevertheless, would not have delivered the checks to the Woods had Hobson not confirmed Wood's statement that the Pack contract was void.

Likewise, Pack's claim is predicated upon the identical representation by Hobson that the Pack contract was void, thereby resulting in Embry "closing" his transaction with the Woods. Pack asserts that Hobson had a duty to advise Embry on September 30 that merely a contractual dispute had arisen between himself and the Woods and that Pack, nevertheless could close the transaction upon short notice. Pack argues that Hobson's statement resulted in Embry's paying the Woods' indebtedness to First Federal. The summary judgment evidence reflects that Pack expected the Woods to resolve the financial impasse in his favor due to the imminence of the foreclosure.

■ Although the summary judgment evidence is disputed as to Hobson's specific comments during the September 30 conversation, in our review of the summary judgment evidence, Embry's deposition testimony of Hobson's statements on that occasion, and every reasonable inference from it, will be taken as true. *Wilcox v. St. Mary's University*, 531 S.W.2d 589, 593 (Tex.1975). Appellants' points of error urge that First Federal was not entitled to its summary judgment, because there remained material fact issues in First Federal's defense to their respective causes of action. See Tex.R.Civ.P. 166a(c).

By deposition, Embry testified to his best recollection of Hobson's remark on September 30 regarding the validity of the Wood/Pack contract of sale:

Q Did Mr. Wood ever make any statement to you or to Mr. Hopson (sic) in your presence about Mr. Pack not initialing the contract properly?

A Yes, sir.

Q Do you recall what his statements were?

A What Mr. Wood's statement was?

Q Yes.

A Was that Mr. Pack had not come by and initialed some changes or something on their contract along with—he was talking to Mr. Hopson (sic). We sat down. He said, What's going on, Bill, or something. Mr. Hopson (sic) did. And Bill said, Well, me and Mr. Pack—our deal has fell through because—he had some notes wrote there. He read them off about the phone conversation, about the closing statements not agreeing with the contract, about the man has not even come by to initial some changes. We do—as far as I can tell, we have no contract no more. And this was all in sequence.

Q Was it after that sequence that Mr. Hopson (sic) made the statement to you that he agreed with Mr. Wood that the contract was no good?

A He didn't really make it to me. He just said that, *Well, from what you told me—I can't remember his exact words. But something on the order of that it doesn't sound to me like y'all have a contract either.* (Emphasis added)

Thus, Hobson's representations to the Woods and Embry as recalled by the appellant Embry was simply a third party's agreement with Wood's view that the Woods' contract with Pack would not be consummated. Furthermore, Mr. Wood testified by deposition that he had had several additional telephone conversations with Pack on September 29th and 30th to determine if their differences could be resolved. He reported that Pack told him that he, Pack, did not have the requisite money to close the sale under the terms of the contract. Wood testified that because of the problem in closing the sale with Pack, he informed Pack that he was interested in entering into a Lease/Purchase backup contract with a third party to which Pack replied, "Sure, go ahead." Hobson also recalled that Wood told him that Pack *had released him from any obligation under the Pack contract.* Mr. Wood informed Hobson of the discussions between himself and Pack as they progressed. Also, Hobson and Pack both testified to a telephone conversation in which it was confirmed that Wood and Pack were unable to agree on the terms of the sale, and that the Pack closing would not take place as scheduled.

The record shows that there is a second contract of sale for this property to Embry only because of the unresolved dispute between the Woods and Pack shortly before the scheduled foreclosure. Hobson's comment on the non-validity of the Pack contract has not affected either appellants' rights to the property. The Woods have remained the owners of the property; they remain the obligors on First Federal's note.

Pack and Embry's respective contractual rights are unchanged since September 1988. After Pack asserted his continuing interest in his rights under his contract shortly after September 30, the record shows that First Federal has stood ready to deal with either purchaser when the property is sold.

Although there has been an extended delay since the contracts of sale were executed, only the parties to the contracts of sale, not First Federal, have had the authority to resolve the disputes. There has been no settlement. Pack and Embry, furthermore, have had available the alternative course of action of securing a judicial determination of their rights to the property since September 1988. There has been no such judicial hearing.

Therefore, if Pack has a binding agreement with the Woods, and if these parties' differences are resolved, it is clear that Pack may enforce his contractual rights to the property. In that event, Embry has contractual reimbursement rightly speci-

fied in his contract with the Woods, for his payments on the property. On the other hand, if the Woods/Pack agreement is not enforced, the Woods will convey title to the property to Embry. In either event, the appellants continue to be positioned to be accorded all of their legal rights under their respective contracts of sale. They have not been damaged by Hobson's comment to Embry at the September 30 meeting.

■ Additionally, appellants contend that First Federal was their escrow agent, and thus owed each a duty to make full disclosure to Embry of all the facts of the transaction at the September 30 meeting. Although appellee denies that it ever served as escrow agent under either contract of sale, First Federal is shown as one of two escrow agents on the Embry contract. First Federal was deleted as the escrow agent on the Pack contract; a title company was substituted. In this summary judgment review, we will consider that appellee did serve as an escrow agent, at least for the Embry contract.

■ An escrow agent owes a fiduciary duty of loyalty, a duty to make full disclosure, and a duty to exercise a high degree of care to conserve the money in its possession to both parties to the contract. *City of Fort Worth v. Pippen*, 439 S.W.2d 660, 665 (Tex.1969); *Trevino v. Brookhill Capital Resources*, 782 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1989, writ denied); *Capital Title Co., Inc. v. Donaldson*, 739 S.W.2d 384, 389 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Chilton v. Pioneer Nat'l Title Ins. Co.*, 554 S.W.2d 246, 249 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). As stated, Embry contends that Hobson should have advised him of the continuing pendency of the Wood/Pack contract and that Hobson's confirmation of Wood's opinion that Pack's contract was null and void caused him to proceed with the transaction.

We are unable to agree that Hobson did not make a full disclosure to Embry about the Wood/Pack contract. The record shows that the information available to Hobson at the time of the September 30 conversation was that Pack no longer considered himself a prospective purchaser of the property. Likewise, there was nothing in Hobson's own conversation with Pack on September 29 that was contrary to the information received from Mr. Wood. Pack's statement to Hobson that he could close the contract in a short period of time suggests only that he was available; Pack's stated interest at that time was to buy the property at Tuesday's foreclosure if his construction of the contract was not accepted. Pack did not advise Hobson then, or at any subsequent time, prior to the September 30 meeting with Embry, of progress toward settling his disputes with the Woods. Wood and Pack had made no progress resolving their differences at the time of the September 30 discussion: in fact, no resolution of the disputes had been made even at the time of the summary judgment hearing. Mr. Wood's statements that Pack had released him and had no objection to his pursuing a back-up purchaser was consistent with Hobson's knowledge of the status of the Pack contract. It should be noted, furthermore, that it was not in the appellee's interest to prefer one appellant over the other, as First Federal apparently would not be prejudiced by a sale to either Pack or Embry or by a foreclosure, in view of the appraised value of the property.

■ The appellant Embry also contends that First Federal breached its implied covenant of good faith and fair dealing in the performance of its contract by not making the full disclosure to Embry on September 30. Embry argues that these requirements exist as a part of every commercial contract and also in limited circumstances under the common law as a basis for tort liability. *Adolph Coors Co. v. Rodriguez*, 780 S.W.2d 477, 481 (Tex. App.—Corpus Christi 1989, writ denied). If there was a "special relationship" between First Federal and the appellants in order to impose tort liability, it arose out of First Federal's office as escrow agent. On the other hand, the implied covenant of good faith and fair dealing as it pertains to contractual duties has been codified by TEX.

BUS. & COM.CODE ANN. Sec. 1.203 (Vernon 1968). Under this provision, the bad faith conduct must relate to some aspect of performance under the terms of the contract. *Adolph Coors Co.*, 780 S.W.2d at 482. As we have discussed, First Federal did not fail to make a full disclosure to Embry of its knowledge of the status of the Wood/Pack agreement, and therefore, there was no breach of the implied covenant of good faith and fair dealing by the appellee.

The summary judgment is affirmed.

## JUDGMENT

THIS CAUSE came on to be heard on the transcript of the record and the same being inspected, it is the opinion of this Court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the trial court be, and the same is, hereby in all things affirmed. It is further ORDERED that appellants, Larry D. Pack and his surety on appeal, John R. Brumbelow, and Joe Embry and his surety on appeal Western Surety Company, pay all costs in this cause on appeal and that this decision be certified to the court below for observance.